S10Q0193. SCHORR et al. v. COUNTRYWIDE HOME LOANS, INC.
(697 SE2d 827)

CARLEY, Presiding Justice.

When Bradley and Lori Schorr (named plaintiffs) financed the purchase of their home in Georgia, they executed a security deed which was subsequently assigned to Countrywide Home Loans, Inc. Upon full repayment of the underlying loan in 2003, the named plaintiffs demanded in writing that Countrywide cancel the security deed pursuant to OCGA § 44-14-3. The version of that statute which was in effect at the time, prior to its amendment in 2008, provided in relevant part that, upon the failure of the grantee or holder of a security deed or other instrument

> to transmit properly a legally sufficient satisfaction or cancellation as provided in this Code section, the grantee or holder shall, upon written demand, be liable to the grantor for the sum of $500.00 as liquidated damages and, in addition thereto, for such additional sums for any loss caused to the grantor plus reasonable attorney's fees. . . . [T]he grantee or holder shall not be liable to the grantor unless and until a written demand for the liquidated damages is made. No other provision of this Code section shall be construed so as to affect the obligation of the grantee or holder to pay the liquidated damages provided for in this subsection.

Former OCGA § 44-14-3 (c) (Ga. L. 1999, pp. 862, 865, § 2). Compare current OCGA § 44-14-3 (c) (Ga. L. 2008, pp. 352, 353, § 1). When Countrywide allegedly failed to cancel the security deed within the 60-day period set forth in former OCGA § 44-14-3 (b) (1), the named plaintiffs made a written demand for $500 in liquidated damages. Upon Countrywide's failure to pay such liquidated damages, the

named plaintiffs filed a class action in the United States District Court for the Middle District of Georgia on behalf of Countrywide customers whose security deeds had not been cancelled as required by former OCGA § 44-14-3. Countrywide filed a motion to dismiss the claims of putative class members on the ground that the complaint failed to allege that they had individually made written demands for liquidated damages. The district court certified the following question to this Court:

> Whether named plaintiffs in a class action may, pursuant to OCGA § 44-14-3, satisfy the pre-suit written demand requirement for liquidated damages on behalf of putative class action members by the named plaintiffs' satisfaction of the written demand requirement.

See Ga. Const. of 1983, Art. VI, Sec. VI, Par. IV; OCGA § 15-2-9 (a); Supreme Court Rules 46-48.

The district court correctly noted that we have already determined that exhaustion of administrative remedies by named plaintiffs satisfies that pre-suit requirement for all class members. *Barnes v. City of Atlanta*, 281 Ga. 256, 257 (1) (637 SE2d 4) (2006) (*Barnes II*). The particular pre-litigation requirement involved in *Barnes II* was the demand for a tax refund contemplated by OCGA § 48-5-380. Like that statute, former OCGA § 44-14-3

> does not "provide for the form of action to be utilized. By participating as a plaintiff in a class action that includes a claim for [liquidated damages], a [grantor of a security deed] is unquestionably bringing an action for [liquidated damages], which is what the statute permits." [Cits.] Thus, any [such grantor] whom the named plaintiffs represent and who does not ultimately opt out of the class action is considered to have brought suit for [liquidated damages] at the same time as the named plaintiffs.

*Barnes II*, supra. As a result, the named plaintiffs in this case are generally permitted to act as representatives on behalf of the entire class of grantors. *Barnes II*, supra at 258 (1).

Just one example of such representative action, which *Barnes II* drew from persuasive authority, is satisfaction of the requirement for exhaustion of administrative remedies. The nature of that example, in light of the general approval of representative actions by named plaintiffs as discussed above, indicates that the satisfaction of any " 'precondition for suit . . . by the class plaintiff normally will avoid the necessity for each class member to satisfy this requirement

individually.' [Cit.]" *Barnes II*, supra. This more general application of *Barnes II* is also supported by persuasive authority. Where a class action is authorized,

> [m]ultiple [pre-suit] demands for relief need not be filed on behalf of all the members of the class. . . . [F]urther demands are not likely to serve any useful purpose and are not required. The modern class action is "designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions." [Cits.]

*Baldassari v. Public Finance Trust*, 337 NE2d 701, 707 (5) (Mass. 1975). See also *Duhe v. Texaco*, 779 S2d 1070, 1087 (D) (La. App. 2001).

*Barnes II* does not indicate that a "key" factor that "drove" that decision "was the fact that this Court had previously determined in a prior appeal in that case that the City could not constitutionally collect the tax that had been imposed on the plaintiff attorneys. [Cit.]" (Dissent, p. 576.) Actually, the "most important" factor, as even the dissent acknowledges, was the defendant's need for early notice of its "potential" liability. *Barnes II*, supra. That notice was not provided by resolution of the substantive issue, but rather by satisfaction of the precondition for suit and by filing of the lawsuit itself. *Barnes II*, supra. We gave no indication in *Barnes II* that the prior substantive determination was even a minor factor in our decision.

Furthermore, contrary to the dissent, we did not causally connect that prior substantive determination to our ruling that recovery was not limited to those taxpayers who individually demanded a refund. (Dissent, p. 577.) Instead, we simply recognized that the applicable substantive law did not discriminate between those who individually satisfied the precondition for suit and those who did not. *Barnes II*, supra at 259 (1). Thus, it made sense that the named plaintiffs' satisfaction of the precondition for suit and filing of the actual lawsuit as a class action placed the defendant on notice of both the nature of the suit and the potential number of class members. *Barnes II*, supra at 258-259 (1).

Likewise, in the present case, the named plaintiffs' written demand and filing of the lawsuit put Countrywide on notice of a class action which is governed by former OCGA § 44-14-3 and which includes all of its customers whose security deeds had not been cancelled as required by that same substantive law. While this matter may not be of constitutional import as in *Barnes II*, it does involve clearly applicable statutory law for the protection of all class members.

Furthermore, the contrast drawn by the dissent between the liquidated damages demand requirement in former OCGA § 44-14-3 and the administrative procedure at issue in *Barnes II* is a distinction without a difference. Both preconditions for suit are absolute requirements. The City's claim in *Barnes II* that certain class members failed to exhaust their administrative remedies for tax refunds pursuant to OCGA § 48-5-380 pertained to the unwaivable defense of lack of subject matter jurisdiction. *Rockdale County v. Finishline Indus.*, 238 Ga. App. 467, 469-470 (2) (518 SE2d 720) (1999). See also *Norman v. United Cities Gas Co.*, 231 Ga. 788 (204 SE2d 127) (1974); *Hooten v. Thomas*, 297 Ga. App. 487, 489 (677 SE2d 670) (2009). Thus, the requirement for exhaustion of administrative remedies is no less fundamental than the requirement for a demand of liquidated damages. The failure to fulfill either of these preconditions for suit absolutely bars recovery. More important to this case, fulfillment of each precondition by the named plaintiffs and their subsequent filing of a class action provide notice to the defendant with respect to the nature of the suit, the governing law, and the extent of the class.

In short, there is no reason not to apply in this case the general rule allowing the named plaintiffs in a class action to satisfy preconditions for suit on behalf of the entire class. An exception to that general rule is not mandated by any " 'genuinely unique statutory requirements' " in former OCGA § 44-14-3, as that statute "neither prohibits utilization of a class action, nor expressly requires individual [satisfaction of the precondition for suit]. [Cits.]" *Barnes II*, supra at 258 (1). See also *Duhe v. Texaco*, supra ("The statute does not require that the notice [or demand] be given by each and every [class member] individually. [Cit.]").

Adoption of the dissent's position would convert a general rule applicable to class actions into an exceedingly narrow exception by means of an equally narrow reading of *Barnes II*. The general rule permitting pre-litigation representation of a class would be abrogated, leaving only a single exception to a newly adopted general rule in Georgia forbidding the satisfaction by a named plaintiff of a precondition for suit on behalf of a class. That extremely limited exception would apparently apply only when the particular precondition is exhaustion of administrative remedies, a constitutional challenge is involved and, most remarkably, the issue of liability to the class has already been determined. We decline to overturn a significant area of the law governing class actions in any such manner. Instead, we conclude that the certified question presented by the district court must be answered in the affirmative.

*Certified question answered. All the Justices concur, except Melton, J., who dissents.*

MELTON, Justice, dissenting.

Because I believe that a proper reading of the applicable law compels this Court to answer the certified question presented here in the negative, I must respectfully dissent from the majority's erroneous conclusion that the certified question here can be answered in the affirmative.

The record reveals that Bradley and Lori Schorr are the named plaintiffs in a class action suit against Countrywide Home Loans, Inc. Like all plaintiffs in the case, the Schorrs financed their home with a loan from Countrywide. Once the Schorrs paid off the underlying loan in full, they demanded in writing that Countrywide cancel the security deed pursuant to the pre-2008 version of OCGA § 44-14-3, which is applicable to this case. Countrywide did not cancel the deed, so the Schorrs made a written demand for the cancellation of the deed and $500 in liquidated damages, again pursuant to the former version of OCGA § 44-14-3.[1]

Countrywide did not pay the liquidated damages, so, in February 2007, the Schorrs filed a class action lawsuit in the United States District Court for the Middle District of Georgia on behalf of the class of Countrywide customers whose security deeds had not been cancelled as required by the former version of OCGA § 44-14-3. However, while the Schorrs had made a written demand for liquidated damages pursuant to the statute prior to filing the lawsuit, the other members of the class had not. Countrywide filed a motion to

---

[1] The pre-2008 version of the statute provided in relevant part that:

. . .

(b)(1) Whenever the indebtedness secured by any instrument is paid in full, the grantee [i.e. the lender] or holder of the instrument, within 60 days of the date of the full payment, shall cause to be furnished to the clerk of the superior court of the county or counties in which the instrument is recorded a legally sufficient satisfaction or cancellation to authorize and direct the clerk or clerks to cancel the instrument of record. The grantee or holder shall further direct the clerk of the court to transmit to the grantor [i.e. the borrower] the original cancellation or satisfaction document at the grantor's last known address as shown on the records of the grantee or holder.

. . .

(c) Upon the failure of the grantee or holder to transmit properly a legally sufficient satisfaction or cancellation as provided in this Code section, the grantee or holder shall, *upon written demand*, be liable to the grantor for the sum of $500.00 as liquidated damages and, in addition thereto, for such additional sums for any loss caused to the grantor plus reasonable attorney's fees. The grantee or holder shall not be liable to the grantor if he or she demonstrates reasonable inability to comply with subsection (b) of this Code section; and the grantee or holder *shall not be liable to the grantor unless and until a written demand for the liquidated damages is made.* No other provision of this Code section shall be construed so as to affect the obligation of the grantee or holder to pay the liquidated damages provided for in this subsection.

. . .

(Emphasis supplied).

dismiss the claims for the members of the class who had failed to make a written demand. The Schorrs then filed a motion to certify a question of state law to this Court (see Ga. Const. of 1983, Art. VI, Sec. VI, Par. IV; OCGA § 15-2-9 (a)), and the trial court granted the motion, requesting that this Court answer the question whether the named plaintiffs in a class action may, pursuant to OCGA § 44-14-3, satisfy pre-suit written demand requirements for liquidated damages on behalf of putative class action members by the named plaintiffs' satisfaction of the written demand requirement. For the reasons that follow, I conclude that a proper reading of the applicable law compels this Court to answer the question in the negative.

The analysis begins with this Court's decision in *Barnes v. City of Atlanta*, 281 Ga. 256 (637 SE2d 4) (2006) (*"Barnes II"*), which the majority contends is controlling in this case. In *Barnes II*, a class of attorneys sued the City of Atlanta for a refund of occupational taxes that the City had unconstitutionally collected from them. Prior to filing the lawsuit, however, some of the class members had exhausted their administrative remedies by filing a claim with the City for a tax refund as required by OCGA § 48-5-380,[2] whereas other class members had not filed the statutorily required pre-lawsuit refund claim with the City. In reversing the Court of Appeals' decision, which held that the class members who had not satisfied the pre-lawsuit refund claim requirement must do so, this Court stated:

> Although OCGA § 48-5-380 is applicable to [the suit of the class members who have not satisfied the pre-suit refund claim requirement], so too are those principles which apply generally in class actions, including that which permits a representative to act on behalf of an entire class. Where, as here, "exhaustion of administrative remedies is a precondition for suit, the satisfaction of this requirement by the class plaintiff normally will avoid the necessity for each class member to satisfy this requirement individually." 2 Newberg on Class Actions § 5:15, p. 438 (4th ed. 2002).

---

[2] The relevant portion of the statute states that

[a]ny taxpayer [who has filed a claim for a refund and] whose claim for refund is denied by the governing authority of the county or municipality or whose claim is not denied or approved by the governing authority within one year from the date of filing the claim shall have the right to bring an action for a refund in the superior court of the county in which the claim arises. No action or proceeding for the recovery of a refund shall be commenced before the expiration of one year from the date of filing the claim for refund unless the governing authority of the county or municipality renders a decision on the claim within the one-year period. No action or proceeding for the recovery of a refund shall be commenced after the expiration of one year from the date the claim is denied. . . .

OCGA § 48-5-380 (c).

Decisions to the contrary, such as *U. S. Xpress v. State of New Mexico*, 136 P3d 999 (N.M. 2006), are "based on genuinely unique statutory requirements." 2 Newberg, supra at 440. OCGA § 48-5-380, unlike certain tax refund statutes, neither prohibits utilization of a class action, nor expressly requires individual exhaustion of administrative remedies. See *Arizona Dept. of Revenue v. Dougherty*, 29 P3d 862, 869 (B) (Ariz. 2001). Compare OCGA § 48-2-35 (c) (5) [("An action for a refund pursuant to paragraph (4) of this subsection shall not be brought by the taxpayer on behalf of a class consisting of other taxpayers who are alleged to be similarly situated.")].

*Barnes II*, supra, 281 Ga. at 257-258 (1).

The majority claims that, because here, former OCGA § 44-14-3 neither expressly prohibits utilization of a class action, nor expressly requires individual exhaustion of the liquidated damages demand requirement, our holding in *Barnes II* dictates that the Schorrs' satisfaction of the liquidated damages demand requirement in this case obviates the need for the putative class members to do the same. However, the majority completely ignores that a key factor that drove our decision in *Barnes II* was the fact that this Court had previously determined in a prior appeal in that case that the City could not constitutionally collect the tax that had been imposed on the plaintiff attorneys. See *City of Atlanta v. Barnes*, 276 Ga. 449 (1) (578 SE2d 110) (2003) ("*Barnes I*"). As we stated in *Barnes II*:

> We have already determined that the City unconstitutionally regulated the practice of law. *Barnes I*, supra at 450 (1). Such a determination does not discriminate between those who individually demanded a refund "and those who did not. The [City] unconstitutionally collected taxes from *all* of these individuals." (Emphasis in original.) *Bailey v. State of North Carolina*, [500 SE2d 54, 73-75 (V) (N.C. 1998)]. Limiting recovery only to those taxpayers with the foresight to have demanded a refund is "untenable in a case such as this, where the matter is of constitutional import and where, in practical consequence, the purpose of the [ordinance] was realized." *Bailey v. State of North Carolina*, supra.

Id. at 259 (1). Thus, as this Court made clear from its decision in *Barnes I*, there was no dispute in *Barnes II* that the plaintiffs involved in the case were entitled to receive a refund of the illegally collected tax. Indeed, once this Court determined as a matter of law

that the City's collection of the occupational tax was unconstitutional, the City's obligation to pay a tax refund to those plaintiffs from whom it had collected the occupational tax became clear, and the need for the City to receive early notice of its "potential" liability and the underlying constitutional issue through each plaintiff individually exhausting his or her administrative remedies was obviated. As we further stated in *Barnes II*,

> the most important factor in applying the administrative exhaustion requirement to cases involving the constitutionality of taxes is the state or local government's need for early notice of its potential liability. In this case, when the administrative claims were filed by the named plaintiffs, and certainly by the time the lawsuit was filed thereafter, the City was aware of a constitutional challenge to the validity of its occupation tax ordinance, and should have been fully aware of the number of attorneys who paid the tax.

*Barnes II*, supra, 281 Ga. at 258 (1). Accordingly, because this Court had "already determined that the City unconstitutionally regulated the practice of law [by collecting the occupational tax,] *Barnes I*, supra at 450 (1)[,]" and because the City had already been given notice of, and had already litigated, the constitutional claim such that it was aware of its liability and the number of attorneys who had paid the unconstitutional tax, "[l]imiting recovery only to those taxpayers with the foresight to have demanded a refund [was] untenable . . . [particularly] where the matter [was] of constitutional import and where, in practical consequence, the purpose of the ordinance was realized." (Citation and punctuation omitted.) Id. at 259 (1).[3]

Here, however, the same cannot be said. Contrary to the majority's contentions, *Barnes II* does not support the proposition that the Schorrs may satisfy the liquidated damages demand requirement of former OCGA § 44-14-3 on behalf of the putative class members, as the instant case is fundamentally distinguishable from *Barnes II*. For one thing, the instant case does not involve the exhaustion of administrative remedies with respect to an unconstitutional tax, and the matter is not "of constitutional import." *Barnes II*, supra, 281 Ga. at 259 (1). Moreover, there is no prior decision of any court in this

---

[3] This Court used very specific language in *Barnes II* to address an "administrative exhaustion requirement [in a] case[ ] involving the constitutionality of [a] tax[ ]." *Barnes II*, supra, 281 Ga. at 258 (1). The majority is taking the original meaning of *Barnes II* out of its intended context in order to expand the holding of that case to reach the fundamentally distinguishable matters involved here.

case that has predetermined the issue of Countrywide's liability to the class of individuals who have paid off their loans and whose security deeds have not yet been canceled. To the contrary, liability in this case is still very much an open question, as liability cannot even *arise* under former OCGA § 44-14-3 until a borrower has satisfied the liquidated damages demand requirement of the statute. See former OCGA § 44-14-3 (c) (a lender "shall *not* be liable to the [borrower] unless and until a written demand for the liquidated damages is made") (emphasis supplied). In this regard, unlike the situation in *Barnes II* where the City only needed to be placed on notice one time about a constitutional challenge that would affect all members of the class action, the notice given by the Schorrs to support their own claim against Countrywide in this case does nothing to inform Countrywide about the other claims that have not been properly raised by the members of the putative class and that cannot, as a matter of law, give rise to liability for Countrywide precisely *because* they have not been properly raised.

In this connection, the plain language of former OCGA § 44-14-3 reveals that the liquidated damages demand requirement contained therein is by no means a mere procedural hurdle that must be overcome, but is a substantive element that must be proven to establish any claim for liability against a lender who has failed to properly cancel a security deed. Again, "[u]pon the failure of the [lender] to transmit properly a legally sufficient satisfaction or cancellation as provided in this Code section, the [lender] shall, *upon written demand*, be liable to the [borrower] for the sum of $500.00 as liquidated damages . . . and the [lender] *shall not be liable to the [borrower] unless and until a written demand for the liquidated damages is made*." (Emphasis supplied.) Former OCGA § 44-14-3 (c). Unlike the administrative procedure at issue in *Barnes II*, where the primary purpose of the procedure was to give notice to the city of a potential claim that may or may not have been viable, here, *no claim exists at all* "unless and until" the liquidated damages demand requirement is met. As this Court contemplated in *Barnes II*, such "unique statutory requirements" cannot be fulfilled by a named plaintiff on behalf of the putative class members. See *Barnes II*, supra, 281 Ga. at 258 (1). In order to equate the liquidated damages demand requirement of former OCGA § 44-14-3 with the adminis-trative procedure contained in OCGA § 48-5-380 (c), the majority must disregard the plain language of OCGA § 44-14-3, which this Court is expressly forbidden from doing. *Telecom\*USA v. Collins*, 260 Ga. 362, 363 (1) (393 SE2d 235) (1990) ("[T]he 'golden rule' of statutory construction . . . requires us to follow the literal language of [a] statute unless it produces contradiction, absurdity or such an inconvenience as to insure that the legislature meant something

else.'') (citation and punctuation omitted); *State v. Fielden*, 280 Ga. 444, 448 (629 SE2d 252) (2006) (''[U]nder our system of separation of powers this Court does not have the authority to rewrite statutes.''). Indeed, unlike the administrative procedures of OCGA § 48-5-380 (c) that serve the primary purpose of providing ''early notice [to a government entity] of its potential liability'' (*Barnes II*, supra, 281 Ga. at 258 (1)), the Legislature has made the liquidated damages demand provision of former OCGA § 44-14-3 a *substantive* requirement for all plaintiffs to fulfill before a lender can be subjected to liability. Based on the ''unique statutory requirements'' of former OCGA § 44-14-3, the Schorrs cannot step into the shoes of the putative class members to fulfill the liquidated damages demand requirement of the statute. When an individual liquidated damages demand has not been filed in order to give rise to a specific plaintiff's claim, a claim simply cannot and does not exist. See former OCGA § 44-14-3. The certified question here must therefore be answered in the negative, and I must respectfully dissent from the majority's erroneous conclusion otherwise.

DECIDED JULY 12, 2010.

*Bondurant, Mixson & Elmore, Michael B. Terry, Frank M. Lowrey IV, Jason J. Carter, Charles A. Gower, Ben B. Philips*, for appellants.

*Hunton & Williams, Bryan A. Powell, Lawrence J. Bracken II, Jason M. Beach*, for appellee.

*King & Spalding, Dwight J. Davis, Barry Goheen, Jennifer D. Fease*, amici curiae.